## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL BOOKARD,** | : | **CIVIL ACTION NO. 1:21-CV-1569** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **RICHARD ELLERS,** *et al.*, | : | |
| | : | |
| **Defendants** | : | |

### MEMORANDUM

This is a prisoner civil rights case under 42 U.S.C. § 1983 in which plaintiff
Michael Bookard, an inmate in the State Correctional Institution-Rockview ("SCI-
Rockview") who has been incarcerated in that facility at all relevant times, alleges
that defendants have violated his civil rights by being deliberately indifferent to a
serious medical need.  Defendants have moved to dismiss the complaint through
two separate motions.  Both motions will be granted, and the complaint will be
dismissed without prejudice.

## I.    Factual Background & Procedural History

Bookard initiated this case through the filing of a complaint on September
13, 2021, naming as Defendants Richard Ellers, SCI-Rockview's Corrections Health
Care Administrator; Vernon Preston, a physician in the prison; Ethan Ernst, a
physician's assistant in the prison; Hans Reisinger, a physician's assistant in the
prison; and Elaine Coffman, the prison's head nurse.  (Doc. 1 at 2-3, 13).  The
complaint alleges that on June 28, 2018, Bookard suffered a stroke while he was in
his cell that caused "permanent nerve damage to the left side" of his nose.  (Id. at 5).

After he suffered the stroke, Bookard was allegedly denied medical care until December 21, 2020.  (Id.)  More specifically, Bookard alleges that Preston refused to meet with him for three years and that during that period Ellers and Ernst repeatedly prevented Preston from meeting with Bookard.  (Id. at 4, 12).

The complaint alleges that Bookard had several other medical conditions in addition to the stroke.  First, the complaint alleges that Defendant Reisinger discovered that Bookard had a "brain stem injury that caused los[s] of feeling to [the] right side" of Bookard's body, loss of sight in Bookard's left eye, and loss of feeling in the left side of Bookard's face.  (Id. at 5).  Second, the complaint alleges that Bookard had "open lesions" on his face and the top of his head, which were allegedly caused by a "flesh eating bacteria."  (Id. at 7, 12.)  Third, the complaint alleges that the nerve damage to Bookard's nose caused his nose to "eat[] it[]self away."  (Id. at 12).

Defendants allegedly provided inadequate medical care to treat Bookard's various ailments.  Defendant Preston allegedly refused to meet with Bookard about the stroke, the nerve damage, or the lesions on Bookard's head.  (Id. at 12).  Defendant Ernst allegedly stated that he did not know what was wrong with Bookard and instead "chose to keeping changing [Bookard's] pain meds," which allegedly caused Bookard's lesions.  (Id.)  Ernst purportedly also "ignored" the "obvious signs" that Bookard had had a stroke and "failed to investigate" Bookard's other symptoms.  (Id. at 12-13).  Defendant Reisinger allegedly failed to provide adequate medical care upon discovering Bookard's brain stem injury and delayed treatment of Bookard's stroke for approximately eleven months.  (Id. at 13).

Reisinger also allegedly barred Bookard from accessing the prison dining hall, barbershop, or yard and removed Bookard from his employment in the prison due to the flesh-eating bacteria.  (Id.)  Finally, Defendant Coffman allegedly had Bookard "locked away" and removed from his employment due to the flesh-eating bacteria instead of properly investigating Bookard's conditions.  (Id.)

Bookard attaches 29 exhibits to his complaint, several of which contradict the allegations in the complaint.  As Exhibit A, Bookard attaches inmate grievances he filed on March 25, 2019 complaining that Defendants Preston and Ernst were refusing to see him and that Ernst had given him pain medications that were exacerbating his skin conditions.  (Doc. 1-1)  Defendant Ellers denied both grievances on April 15, 2019, concluding based on a review of Bookard's medical records that Bookard had "received extensive medical assessment, testing, and follow-up from Dr. Preston and PA Ernst over the past 9 months" including visits with Dr. Preston in June and July 2018, three other visits with another physician, and a visit with an ophthalmologist.  (Id. at 3).  Ellers also noted that the medical providers had concluded that Bookard's pain medications were not causing or exacerbating his skin conditions.  (Id.)  Bookard appealed these grievances through all stages of review, asserting that it was "a lie" that he had been seen by Preston and Ernst.  (Id. at 5-6).  All of his administrative appeals were denied.  (Id. at 7-11).

As Exhibit B, Bookard attaches a grievance he filed on March 27, 2019 complaining that Defendant Coffman removed him from his prison job and had him placed on "medical lay-in" on March 19, 2019.  (Doc. 1-2 at 1).  Defendant Ellers denied this grievance on May 8, 2019, noting that review of medical records "failed

to substantiate" Bookard's allegations, as there were no records of Coffman ordering a medical lay-in, and prison employment records showed that Bookard had worked 3.5 hours on March 19, 2019. (Id. at 2). Bookard appealed but did not dispute the accuracy of the records noted by Ellers. (Id. at 3).

As Exhibit C, Bookard attaches a grievance he filed on April 26, 2019 complaining that he was denied treatment on April 16, 2019 by Defendant Reisinger. (Doc. 1-3 at 1). Defendant Ellers denied the grievance, concluding that Bookard had not been denied care because he had been seen by Reisinger on April 15, 2019 and May 14, 2019. (Id. at 2). Bookard appealed the denial of the grievance, but he again failed to dispute the accuracy of the records cited by Ellers. (Id. at 3).

As Exhibit D, Bookard attaches a grievance he filed on May 23, 2019 against Defendant Ellers, asserting that Ellers abused his power in denying Bookard's grievances. (Doc. 1-4 at 1). According to Bookard's grievance against Ellers, an outside physician named Dr. Leclerc stated that Bookard had a brain injury and nerve damage and that he needed an MRI, but Ellers lied in the denials of Bookard's grievances by stating that Bookard had already been treated for his medical conditions. (Id.)

This grievance was denied by non-party Morris L. Houser, III on June 12, 2019. (Id. at 2). Houser provided the following reasoning:

> Inmate Bookard files this grievance against Corrections Health Care Administrator (CHCA)-Ellers for abuse of power within his official capacity. Specifically, he believes CHCA-Ellers has suppressed materials which would show evidence of his brain injury. He supports this claims [sic] by reporting on 05/22/19 he was informed by Dr. Leclerc his medical records showed the SCI-Rockview Medical Department knew of this injury and required an MRI in June 2018. As

a result of his lack of treatment he reports experiencing pain and suffering.  Therefore, CHCA-Ellers has shown deliberate indifference to a serious medical need.  He seeks relief in the form of $50,000 and $500,000 jointly and the full payment of any prosecution.  Upon review and investigation I've found the following:

Since the beginning of 2019 inmate Bookard has been evaluated by at least 8 different medical staff on at least 12 different occasions for his reported condition.  In general terms its reported, and agreed upon, by medical providers that inmate Bookard is experiencing sensations on his face and scalp which leads him to pick at his skin, which in turns [sic] leads to open, lesions and sores on his face and scalp.  He has been given prescription medication to minimize these sensations which he refuses to take.  He reportedly believes the prescribed medication is the cause of these open sores.  However, documentation from PA-Reisinger shows these lesions and sores were present before starting the medication.  In addition to medication non-compliance, he has shown a history of treatment non-compliance regarding this condition by failing to attend follow-up appointments and refusing to try alternative medications.  Therefore he continues to experience these sensations, continues to pick at these areas, and continues to experience open lesions on his face and scalp.

It's been noted by Physician Assistant (PA)-Reisinger on 02/09/19 that inmate Bookard had undergone a CT-scan which produced no identifiable diagnosis.  Most recently on 05/17/19 PA-Reisinger, in consultation with site and regional medical directors, ha[s] made a referral to a community neurologist to assist with the diagnostic approach.  This evaluation was completed on 06/09/19 and the results are pending.  Additionally, on 05/23/19 PA-Reisinger discussed alternative prescription medications, which he refused.

The assessment on 05/22/19 by Dr. Leclerc, which is referenced in this grievance, was an evaluation of his facial lesions and resulted in the recommendation of a dermatology consultation.  This evaluation is scheduled for 06/26/19.  There is absolutely no documentation from this assessment to suggest inmate Bookard is suffering from a brain injury or hasn't received appropriate medical treatment.  While an MRI test had been discussed prior to Dr. Leclerc's evaluation on 05/22/19, it was agreed upon that the neurological consultation would be more appropriate.

In conclusion I've found no evidence to support inmate Bookard's claims against CHCA-Ellers.  In fact, inmate Bookard's medical treatment has been a collaborative effort between, Dr. Preston, PA-

Reisinger, PA-Ernst, Dr. Leclerc and specialty community providers of neurology and dermatology.

(Id. at 2).

Bookard appealed the denial of his grievance, asserting that contrary to Houser's findings, he had only been seen by two physician's assistants.  (Id. at 4).  Bookard's appeals were denied.  (Id. at 5-7).

Defendants Coffman and Ellers ("DOC defendants") moved to dismiss the complaint for failure to state a claim upon which relief may be granted on November 19, 2021.  (Doc. 17).  The DOC defendants argue that dismissal is appropriate because Bookard fails to allege Ellers's personal involvement in the alleged civil rights violations and because Bookard fails to allege that either defendant was deliberately indifferent to a serious medical need.  (Doc. 18).  Defendants Ernst, Preston, and Reisinger ("medical defendants") moved to dismiss the complaint on December 20, 2021.  (Doc. 23).  The medical defendants argue that dismissal is appropriate for Bookard's failure to allege deliberate indifference and because the allegations against them are too vague to support claims for relief.  (Doc. 24).  Bookard has not opposed either motion to dismiss, and the deadline for doing so has expired under the Local Rules.  See M.D. Pa. L.R. 7.6.

## II.    __Legal Standard__

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light

most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  In addition to reviewing the facts contained in the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, [and] undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).  If the plaintiff's exhibits contradict the allegations in the complaint, the exhibits control. Vorchheimer v. Philadelphian Owners Ass'n, 903 F.3d 100, 112 (3d Cir. 2018).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  To test the sufficiency of the complaint, the court conducts a three-step inquiry. See Santiago v. Warminster Township, 629 F.3d 121, 130-31 (3d Cir. 2010).  In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. at 130 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)).  Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal conclusions may be disregarded. Id. at 131-32; see Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).  Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim

for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550

U.S. at 556.  A claim is facially plausible when the plaintiff pleads facts "that allow[]

the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." Iqbal, 556 U.S. at 678.

Courts must liberally construe complaints brought by *pro se* litigants.  Sause

v. Bauer, 585 U.S. __, 138 S. Ct. 2561, 2563 (2018).  *Pro se* complaints, "however

inartfully pleaded, must be held to less stringent standards than formal pleadings

drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v.

Gamble, 429 U.S. 97, 106 (1976)).

## III.  Discussion

Bookard brings his constitutional claims under 42 U.S.C. § 1983.  Section

1983 creates a private cause of action to redress constitutional wrongs committed by

state officials.  42 U.S.C. § 1983.  The statute is not a source of substantive rights, but

serves as a mechanism for vindicating rights otherwise protected by federal law.

See Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d

1199, 1204 (3d Cir. 1996).  To state a Section 1983 claim, plaintiffs must show a

deprivation of a "right secured by the Constitution and the laws of the United

States . . . by a person acting under color of state law." Kneipp, 95 F.3d at 1204

(quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)).

In this case, the DOC Defendants argue that the complaint should be

dismissed based on Ellers's lack of personal involvement and Bookard's failure to

allege deliberate indifference, while the Medical Defendants seek dismissal for

failure to allege deliberate indifference and because Bookard's allegations are too vague.  We address these arguments below.

### A.    Personal Involvement

We first address the DOC Defendants' argument that the claims against Ellers should be dismissed for Bookard's failure to allege personal involvement. The DOC Defendants argue that dismissal is appropriate because the only claims against Ellers arise from his denial of Bookard's grievances.

We agree.  A defendant cannot be liable for a violation of a plaintiff's civil rights unless the defendant was personally involved in the violation.  Jutrowski v. Twp. of Riverdale, 904 F.3d 280, 289 (3d Cir. 2018).  The defendant's personal involvement cannot be based solely on a theory of *respondeat superior*.  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  Rather, for a supervisor to be liable for the actions of a subordinate, there must be evidence of personal direction or actual knowledge and acquiescence.  Id.  A defendant's review and denial of a prisoner's grievance is not sufficient to establish the defendant's personal involvement in an underlying violation of the prisoner's constitutional rights. Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2020).

Bookard does not allege that Ellers was personally involved in his medical care in any way.  Rather, it appears from the complaint that Bookard is attempting to hold Ellers liable solely based on the denial of Bookard's grievances, which is not a sufficient basis to establish personal involvement.  Id.  Accordingly, we will dismiss the claims against Ellers.

**B.     Deliberate Indifference**

We next consider the defendants' arguments that Bookard has failed to allege deliberate indifference to a serious medical need.  To state a deliberate indifference claim upon which relief may be granted, a plaintiff must allege "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need."  Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003) (citing Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999)).  A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the necessity for a doctor's attention."  Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).  In addition, "if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment."  Id. (citation omitted).  A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer v. Brennan, 511 U.S. 825, 837 (1994).

Negligence by defendants is not sufficient to establish deliberate indifference to a serious medical need.  Id. at 835.  "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize

claims which sound in state tort law."  Palakovic v. Wetzel, 854 F.3d 209, 228 (3d Cir. 2017) (quoting United States ex rel. Walker v. Fayette County, 599 F.2d 573, 575 n.2 (3d Cir. 1979)).

Based on our review of the complaint and the attached exhibits, we find that Bookard has failed to allege that the defendants were deliberately indifferent to a serious medical need.  Although Bookard alleges that defendants failed to provide him care for his stroke, brain stem injury, and skin condition for several months, the grievances and other exhibits that he has attached to his complaint plainly contradict these allegations.  Contrary to the allegations in the complaint, the exhibits show that Bookard received extensive treatment and medication over the period in question by prison staff and outside doctors.  (See Docs. 1-1, 1-2, 1-3, 1-4). We must view these contrary statements in the exhibits as controlling. Vorchheimer, 903 F.3d at 112.

The instant case is indistinguishable from Lanza v. Moclock, 842 F. App'x 714, 718 (3d Cir. 2021) (nonprecedential), where the plaintiff alleged that he was denied medical care for a period of years but attached as exhibits to his complaint "exhaustive records of his communications with the medical staff and prison administration through requests for treatment and grievances," which showed that the plaintiff "was treated with a variety of medications and seen regularly by medical staff at his request."  Id.  Given the contradiction between the complaint and the attached exhibits, the Third Circuit upheld the district court's conclusion that the allegations in the complaint amounted to "nothing more than Lanza's subjective disagreement with the treatment decisions and medical judgment of the

medical staff at the prison." Id.[1]  Like the Lanza court, we find that Bookard has failed to allege deliberate indifference based on the defendants' purported failure to provide care.

Bookard's other allegations of deliberate indifference fare no better. Bookard alleges that defendant Ernst repeatedly changed Bookard's medication prescriptions and that the medications caused his skin condition, but the exhibits indicate that the medications did not cause the condition and that the condition was present before Bookard was placed on medication.  (See Docs. 1-3, 1-5).  Similarly, Bookard alleges that Coffman and Reisinger restricted his access to employment and programs in the prison based on the flesh-eating bacteria, but the exhibits attached to his complaint contradict this and indicate that Coffman and Reisinger did not restrict his activity.  (See Docs. 1-2, 1-3).  Moreover, even if this allegation were not contradicted by Bookard's exhibits, it would still not be sufficient to allege deliberate indifference: rather than asserting that Coffman and Reisinger were indifferent to the flesh-eating bacteria, it appears that Bookard is alleging that they took the condition *too* seriously by restricting his movements in the prison.  We accordingly will dismiss the complaint because Bookard has failed to allege that any of the defendants were deliberately indifferent to a serious medical need.

We will, however, grant Bookard leave to amend.  Before dismissing a civil rights complaint for failure to state a claim upon which relief may be granted, a

---

[1] The court acknowledges that nonprecedential decisions are not binding upon federal district courts.  Citations to nonprecedential decisions reflect that the court has carefully considered and is persuaded by the panel's *ratio decidendi*.

district court must permit a curative amendment unless the amendment would be inequitable or futile.  <u>Phillips</u>, 515 F.3d at 245.  Leave to amend is appropriate here because Bookard's claims are factually, rather than legally, deficient.

**IV.**   <u>**Conclusion**</u>

We will grant defendants' motions to dismiss, dismiss Bookard's complaint without prejudice, and grant Bookard leave to file an amended complaint.  An appropriate order shall issue.

<u>/S/ CHRISTOPHER C. CONNER</u>
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:   March 1, 2022